# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JAMES R. ZAZZALI, as trustee for the   :
DBSI Estate Litigation Trust and as Trustee :
for the DBSI Private Actions Trust,     :
                                :
          Plaintiff,     :
                                :
          v.         :     C.A. No. 11-614-LPS
                                :
HIRSCHLER FLEISCHER, P.C. and JOHN  :
DOES 1-10,           :
                                :
          Defendants.    :

---

Natasha M. Songonuga, Esq., GIBBONS P.C., Wilmington, DE;
Brian J. McMahon, Esq., E. Evans Wohlforth, Jr., Esq., Debra A. Clifford, Esq., GIBBONS P.C., Newark, NJ.

      Attorneys for Plaintiff.

James W. Semple, Esq. & Jody C. Barillare, Esq., MORRIS JAMES LLP, Wilmington, DE;
Dennis J. Quinn, Esq., Andrew J. Morris, Esq., Zachary G. Williams, Esq., CARR MALONEY P.C., Washington, DC.

      Attorneys for Defendant.

---

## **MEMORANDUM OPINION**

August 21, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are a Motion to Dismiss for Lack of Subject Matter Jurisdiction

(D.I. 10) and a Motion to Dismiss for Failure to State a Claim (D.I. 11) filed by defendant

Hirschler Fleischer P.C. ("Defendant"). For the reasons discussed below, the Court will deny

Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and grant Defendant's

Motion to Dismiss for Failure to State a Claim.

**BACKGROUND[1]**

I.    **Factual Background**

A.    **DBSI Bankruptcy**

DBSI, Inc. and related entities (collectively, "DBSI"), all of whom are Idaho real estate

investment entities, filed bankruptcy petitions in the United State Bankruptcy Court for the

District of Delaware (the "Bankruptcy Court") beginning on November 6, 2008. (D.I. 1 ¶¶ 4, 6)

By Order dated October 26, 2010, the Bankruptcy Court confirmed the *Second Amended Joint*

*Chapter 11 Plan of Liquidation Filed by the Chapter 11 Trustee and the Official Committee of*

*Unsecured Creditors* ("the Plan"). (*Id.* ¶ 10) The Plan created two trusts: the DBSI Estate

Litigation Trust ("ELT") and the DBSI Private Actions Trust ("PAT"). (*Id.*) The ELT holds the

claims of the consolidated bankruptcy estate of the DBSI debtor entities, while the PAT holds the

claims of creditors and equity interests holders of DBSI who chose to assign their claims. (*Id.*)

The Bankruptcy Court appointed James R. Zazzali ("Zazzali" or "Plaintiff" or "Trustee") as the

trustee for the ELT and the PAT. (*Id.* ¶¶ 9-11)

---

[1]The Court is not making any findings of fact. Instead, at this point, the Court must take
as true all well-pleaded factual allegations in the complaint.

1

### B.   DBSI's Investment Structure

From 2004 to 2008, DBSI and its affiliates "presented to the world an illusion of a monolith of wealth, competence, and power." (*Id.* ¶ 1) In Private Placement Memoranda ("PPMs")[2] drafted by Defendant, investors were informed that DBSI was a successful real estate holding company with a history of successful and sophisticated real estate ventures, in which no investor had ever lost money. (*Id.* ¶¶ 1, 28-30)

DBSI sold tax-advantage instruments called "1031 Exchanges," named after the section of the Internal Revenue Code authorizing these investments. (*Id.* ¶ 25) Through the 1031 Exchanges, DBSI investors obtained "tenant-in-common" ("TIC") interests in commercial real estate properties. (*Id.*) DBSI structured its TIC syndications using a master lease arrangement under which the TIC property was leased to a DBSI affiliate master lessor and then subleased to a tenant. (*Id.* ¶¶ 31, 33, 83) DBSI guaranteed that rent from sublessees would be paid to TIC investors. (*Id.* ¶ 83) Rent payments from sublessees did not cover both the rent owed to TIC investors and the debt service; consequently, the operation of the underlying properties could not support DBSI's obligations. (*Id.* ¶ 98) As the TIC syndication business failed, DBSI raised capital from new TIC syndications of properties purchased for sums exceeding the market value of the properties. (*Id.*) DBSI's TIC syndication guarantees were sold on the representation that DBSI had substantial value, even as newly raised investors' funds were being used to pay off existing investors. (*Id.*)

Additionally, DBSI created Accountable Reserves. (*Id.* ¶¶ 32, 35) In its PPMs, DBSI

---

[2]"A PPM is an offering document that sets forth the details and terms of investments offered to the public." (D.I. 1 ¶ 27)

informed investors that it would set aside five percent of investors' funds to pay the costs of

maintaining the properties and these funds would be kept in the Accountable Reserves. (*Id.* ¶ 37)

DBSI informed investors that any amount of their invested funds not used for property

maintenance would be returned to the TIC owners. (*Id.* ¶¶ 37; *see id.*, Ex. B) Only

approximately $18 million of the Accountable Reserves funds were used as represented, whereas

$82 million of Accountable Reserves were spent for unauthorized purposes, including

misappropriation by DBSI executives. (*Id.* ¶¶ 51-52)

In the fall of 2008, "the world learned" that DBSI was running an elaborate Ponzi

scheme. (*Id.* ¶¶ 2, 24)

**C.     Defendant's Involvement with DBSI**

At all times relevant to the Complaint, Defendant served as legal counsel to DBSI. (*Id.*

¶ 28) Defendant advised DBSI on creation of the master lease structure and various § 1031

issues. (*Id.* ¶ 91) From 2004 until 2006, Defendant drafted all of the PPMs used by DBSI in

connection with their TIC syndications and provided material and substantial advice to DBSI

regarding the drafting of PPMs. (*Id.* ¶¶ 28-29) After 2006, DBSI continued to use language

drafted and/or reviewed by Defendant in subsequent PPMs. (*Id.* ¶ 78) The allegedly misleading

language that Defendant drafted included statements that DBSI would use Accountable Reserves

only for specified purposes, as well as false statements about DBSI's net worth, loan-to-loan

value ratios, and related financial disclosures. (*Id.* ¶¶ 44, 60, 68, 76, 87; *see also id.*, Ex. A; *id.*,

Ex. B; *id.*, Ex. C)

**II.     Procedural History**

On July 11, 2011, the Trustee filed a complaint, on behalf of the ELT and PAT, against

Defendant and John Does 1-10 for their role in the DBSI fraud. (*See* D.I. 1 and, hereinafter, "Complaint") In the Complaint, the Trustee asserts fifteen counts on behalf of one or both of the trusts.[3] On behalf of both trusts, the Trustee asserts the following claims: violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et. seq.* and violation of the Idaho RICO statute, IDAHO CODE § 18-708(c) (Count 1), and conspiracy to violate the federal and Idaho RICO statutes (Count 2). On behalf of the ELT, the Trustee asserts the following claims: professional malpractice (Count 3), aiding and abetting breach of fiduciary duty owed to DBSI (Count 4), and avoidance and recovery of actual and constructive fraudulent transfers (Counts 9-15). On behalf of the PAT, the Trustee asserts the following claims: aiding and abetting fraud (Count 5), civil conspiracy (Count 6), aiding and abetting breach of fiduciary duty owed to owners of reserve funds (Count 7), and aiding and abetting breach of fiduciary duty owed to creditors (Count 8).

On October 7, 2011, Defendant filed the pending motions to dismiss. (*See* D.I. 10; D.I. 11) The parties completed briefing on the pending motions on January 13, 2012. (*See* D.I. 27; D.I. 28) The Court held oral argument on June 6, 2012. *See* Mot. Hr'g Tr., June 6, 2012 (hereinafter "Tr.").

After the hearing, the Court ordered supplemental briefing regarding (1) what notice, if any, Defendant received regarding the DBSI bankruptcy, confirmation of the Second Amended Joint Chapter 11 Plan of Liquidation, and the possibility that Defendant might be subject to suit; and (2) the applicability and impact of equitable mootness on the issues pending before the

---

[3]The Complaint initially included a count for disallowance, however, this claim was dismissed without prejudice on January 9, 2012. (*See* D.I. 26)

4

Court. (*See* D.I. 34) The parties completed this supplemental briefing on June 20, 2012. (*See* D.I. 38; D.I. 39)

## LEGAL STANDARDS

### I. Motion to Dismiss for Lack of Standing

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter. Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (internal citations omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (noting that standing is "threshold jurisdictional question"). A court may grant a motion to dismiss for lack of standing only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Mao v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

There are three requirements for Article III standing: (1) injury in fact, which means an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the challenged conduct, which means that the injury fairly can be traced to the challenged action of the defendant and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, which means that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In addition to establishing Article III standing, a party must establish "prudential standing." *See Elk Grove Unified Sch. Dist. v. Newton*, 542 U.S. 1, 11-12 (2004); *Twp. of Lyndhurst v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011). Prudential standing embraces the following principles:

> (1) the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties; (2) even when the plaintiff has alleged reasonable injury sufficient to meet the requirements of Article III, the federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches; and (3) the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 485 (3d Cir. 1998) (internal quotation marks and citations omitted).

The party invoking federal jurisdiction has the burden to establish standing to sue. *See Lujan*, 504 U.S. at 561. Each of the standing requirements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotation marks omitted). "When ruling on a motion to dismiss for lack of standing, federal courts may consider affidavits and other factual materials in the record." *Nat'l Ass'n of State Utility Consumer Advocates v. F.C.C.*, 457 F.3d 1238, 1251 (11th Cir. 2006).

## II.    Motion to Dismiss for Failure to State a Claim

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372

F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat

Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).

Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded

allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,

plaintiff is not entitled to relief." *Maio*, 221 F.3d at 481-82 (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

right to relief above the speculative level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While

heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible

on its face" must be alleged. *Twombly,* 127 S. Ct. at 1974. At bottom, "[t]he complaint must

state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each]

necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522

F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). Nor is the Court obligated to

accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.

1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted

inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405,

417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69

(3d Cir. 1996).

## **DISCUSSION**

## **I.     Equitable Doctrines Impacting Defendant's Standing Challenge**

The Trustee asserts that Defendant's standing challenge is untimely because Defendant

did not object to confirmation of the Plan or appointment of the Trustee during the DBSI

bankruptcy proceeding. (*See* D.I. 20 at 15-19) Specifically, the Trustee contends that

Defendant's standing challenge is barred by the doctrines of equitable mootness, res judicata, and

collateral estoppel. The Court disagrees.

### **A.     Equitable Mootness**

"The doctrine of equitable mootness provides that an appeal should be dismissed as moot

when, even though effective relief could conceivably be fashioned, implementation of that relief

would be inequitable." *In re SemCrude, L.P.*, 456 Fed. Appx. 167, 169 (3d Cir. Jan. 3, 2012)

(internal quotation marks omitted). The determination of whether an appeal is equitably moot

requires discretionary balancing of the following equitable and prudential factors:

> (1) whether the reorganized plan has been substantially
> consummated, (2) whether a stay has been obtained, (3) whether
> the relief requested would affect the rights of parties not before the
> Court, (4) whether the relief requested would affect the success of
> the plan, and (5) the public policy of affording finality of
> bankruptcy judgments.

*In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) (en banc).

The Court concludes Defendant's standing challenge is not "equitably moot." As

Defendant emphasizes, the instant action is not an appeal from confirmation of a plan of

reorganization – thus, it unclear whether the doctrine of equitable mootness is even applicable

8

here.[4] Additionally, the Court has an obligation at all times to evaluate whether it has

jurisdiction over the action before it, and Defendant's challenge to the Trustee's standing in the

instant action relates to the Court's jurisdiction. *See UPS Worldwide Forwarding, Inc. v. U.S.*

*Postal Service*, 66 F.3d 621, 626 (3d Cir. 1995) ("[S]tanding implicates federal jurisdiction.").

Finally, to the extent that equitable mootness applies to Defendant's standing challenge, it is an

equitable doctrine. Under the circumstances presented here, the Court will exercise its discretion

to consider Defendant's standing challenge, particularly as it is unclear whether Defendant had

any meaningful opportunity or ability to raise this challenge in any prior proceeding.

## B.    Res Judicata

The Court concludes that Defendant's standing challenge is not barred by the doctrine of

res judicata. Res judicata, or claim preclusion, prevents a party from asserting claims that were

or could have been brought in a prior proceeding. *See In re Mullarkey*, 536 F.3d 215, 225 (3d

Cir. 2008); *see also In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989) ("[A] confirmation order

is *res judicata* as to all issues decided or which could have been decided at the hearing on

confirmation."). However, Defendant was not a party to the bankruptcy proceeding (or in privity

with a party), and res judicata only applies if "there has been (1) a final judgment on the merits in

a prior suit involving (2) the same claim and (3) the same parties or their privies." *In re*

*Montgomery Ward, LLC*, 634 F.3d 732, 736-37 (3d Cir. 2011) (internal quotation marks

---

[4]Defendant, who at the time of Plan confirmation was merely a potential future defendant
in a litigation involving the bankruptcy estate, likely lacks standing to appeal the confirmed Plan.
*See Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741-42 (3d Cir. 1995) (stating that one
must have direct and immediate "pecuniary interest" in bankruptcy in order to have standing to
appeal plan confirmation, and noting that one who is merely "potential defendant" in future
litigation lacks standing to appeal).

omitted). As Defendant observes, Plaintiff "cites no case suggesting that a third party to the plan must intervene at the time of plan confirmation to litigate the issue of standing in a future adversarial proceeding that trustee might or might not file against that third party." D.I. 28 at 9; *see also In re Resorts Int'l, Inc.*, 372 F.3d 154, 169-71 (3d Cir. 2004) (holding that, notwithstanding provisions of confirmed reorganization plan, bankruptcy court lacked jurisdiction over malpractice claim brought by trustee against accounting firm); *Rutherford Hosp., Inc. v. RNH P'ship*, 168 F.3d 693, 699 (4th Cir. 1999) ("[A] bankruptcy court's jurisdiction does not extend to property that is not part of a debtor's estate."). Thus, the doctrine of res judicata is inapplicable.

## C.     **Collateral Estoppel**

The Court concludes that Defendant's standing challenge is not barred by the doctrine of collateral estoppel. Collateral estoppel precludes a party from re-litigating an issue if, among other requirements, "the identical issue was decided in a prior adjudication" and "the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication." *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 n.10 (3d Cir. 2002). Defendant was not a party to the DBSI bankruptcy proceeding or in privity with a party. Thus, the doctrine of collateral estoppel is inapplicable.

## II.     **Motion to Dismiss for Lack of Subject Matter Jurisdiction**[5]

As a threshold matter, the Trustee must establish that it has standing to assert claims on behalf of assigning investors or creditors. *See Marion v. TDI Inc.*, 591 F.3d 137, 147 (3d Cir.

---

[5]It is undisputed that the Trustee has standing to pursue all claims asserted on behalf of the ELT. (*See* D.I. 12 at 1) Thus, the following discussion is limited to whether the Trustee has standing to assert claims on behalf of the PAT.

10

2010) ("[S]tanding, because it implicates a federal court's authority to hear a case, must be addressed as a threshold matter."). Defendant contends the Trustee does not have standing for two reasons: (1) the Complaint fails to adequately allege Article III standing, and (2) the Trustee lacks authority to pursue the assigned claims. The Court finds each of these arguments unpersuasive. Accordingly, the Court will deny Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

## A.    **Article III Standing**

The Court concludes that Plaintiff has adequately alleged Article III standing. First, Plaintiff has adequately alleged that the investors suffered injury in fact: loss of money invested in DBSI. (*See* D.I. 1 ¶¶ 3-4, 133-34, 138-39, 145, 160, 164, 174, 185) Second, Plaintiff has adequately alleged a causal connection between the investors' injuries – being defrauded by DBSI and losing money on investments – and Defendant's conduct in drafting the allegedly misleading PPMs. (*See id.* ¶¶ 22, 26, 27) Defendant's contention that it is "impossible to say whether any assigning investor – much less all of them – relied on a relevant PPM" (D.I. 12 at 7) is unpersuasive, as the Complaint explicitly states that "[i]nvestors must certify that they have read and relied upon the PPM." (D.I. 1 ¶ 27; Tr. at 17-18)[6] Finally, Plaintiff has alleged that the relief requested – compensatory and punitive damages – will redress the injury the investors have

---

[6]Although the Complaint does not explicitly list the dates on which the investors invested with DBSI, the Complaint alleges that the "pattern of fraud on investors . . . continued from at least 2004 to November 2008." (D.I. 1 ¶ 128) During this same time frame, the Complaint alleges that the PPMs contained false and misleading language drafted by Defendant. (*See id.* ¶¶ 29, 78; *see also id.*, Ex. A (showing dates of PPMs)) Thus, the Court draws the reasonable inference that the investors invested between 2004-2008. If discovery reveals that the Trustee is asserting claims on behalf of investors who invested outside of the 2004-2008 period, then Defendant may re-assert its Article III standing challenge.

sustained. (*See id.* ¶¶ 134, 139, 160, 175, 185)

## B.    Trustee's Authority to Pursue Assigned Claims

Defendant contends that the Trustee is subject to the Bankruptcy Code even when acting

as trustee of the PAT. (D.I. 12 at 12)  Under the Bankruptcy Code, a trustee is authorized to act

only for the benefit of the estate.  (*Id.* at 7, 13)  Thus, according to Defendant, when the Trustee

brings claims on behalf of individual investors and creditors – as the Trustee purports to do for

all claims asserted on behalf of the PAT – the Trustee is exceeding its authority under the

Bankruptcy Code. (*Id.* at 14-15)

The Trustee responds that it has authority to bring claims on behalf of the PAT.  (D.I. 20

at 11)  The Trustee contends that a post-bankruptcy trustee who is not asserting claims on behalf

of the estate is entitled, like any assignee, to bring claims on behalf of assigning creditors.  (*Id.* at

7-8)  In essence, the Trustee is arguing that the Bankruptcy Code is not relevant to an assessment

of its authority to pursue claims on behalf of the PAT.

The Court concludes that the Trustee has standing to pursue claims on behalf of assigning

creditors.  As an assignee, the Trustee has standing to assert the injury in fact suffered by the

assignors.[7]  *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774

(2000); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co. ("Lafferty")*, 267 F.3d

340, 360-61 (3d Cir. 2001).  Defendants have failed to persuade the Court that the Trustee, when

acting on behalf of the PAT, should be treated any differently than any other assignee.[8]

_____

[7]Contrary to Defendant's assertion, nothing in 11 U.S.C. § 1123 prevents a party from
assigning its claims to a trustee.

[8]Indeed, numerous other courts have held that a private action trustee has standing to
pursue claims on behalf of assigning parties.  *See, e.g.*, *Kirschner v. Bennett*, 648 F. Supp. 2d

In support of its argument that the Trustee lacks standing, Defendant primarily relies on three cases: *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972); *Williams v. Cal. 1st Bank*, 859 F.2d 664 (9th Cir. 1988); and *Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168 (Del. Ch. 2006). *Caplin* and *Williams* addressed the issue of standing of a *bankruptcy trustee*.[9] *See Caplin*, 406 U.S. at 416 ("The sole issue in this case is whether petitioner, the trustee in reorganization . . . has standing . . . to assert, on behalf of persons holding debentures issued by Webb & Knapp, claims of misconduct by an indenture trustee."); *Williams*, 859 F.2d at 665 (stating trustee asserting claims was "trustee in bankruptcy"). Thus, these cases are not applicable to the issue currently before the Court – whether *a private action trustee post plan confirmation* has standing to bring claims on behalf of assigning creditors.[10] *See Grede v. Bank of NY Mellon*, 598 F.3d 899, 902 (7th Cir. 2010) (holding that *Caplin* did not apply to post plan confirmation private action trustee, because "[a]lthough the terms of the Bankruptcy Code govern the permissible duties of a trustee *in* bankruptcy, the terms of the plan of reorganization (and of the trust instrument) govern the permissible duties of a trustee *after* bankruptcy") (emphasis in original); *Semi-Tech Litig. LLC v. Bankers Trust Co.*, 272 F. Supp. 2d 319, 323-24 (S.D.N.Y. 2003) (distinguishing *Caplin* and *Williams* and holding that post

525, 533 n.12 (S.D.N.Y. 2009) (opining that private action trustee had standing to pursue claims on behalf of assigning parties who were injured by corporate fraud of bankrupt corporation).

[9]Notably, *Caplin* did not even involve the assignment of claims. *See Semi-Tech Litig. LLC v. Bankers Trust Co.*, 272 F. Supp. 2d 319, 323 (S.D.N.Y. 2003) ("*Caplin* is distinguishable from this case in that the debenture holders there, in contrast to the situation here, had not assigned their claims to the trustee.").

[10]For the same reason, the Third Circuit's ruling in *Lafferty* is inapplicable to the present situation; *Lafferty* involved a pre-plan confirmation trustee. *See* 267 F.3d at 344-48; *see also* D.I. 12 at 11.

13

confirmation bankruptcy trustee has standing to bring claims assigned by creditors under

confirmed bankruptcy plan). *Trenwick* is likewise distinguishable, as it involved a litigation trust

and did not involve the assignment of creditors' claims to a private action trust. *See* 906 A.2d at

172, 191.[11]

  While Defendant concedes that the Trustee is not a Chapter 11 bankruptcy trustee such

that the Bankruptcy Code automatically governs the scope of the Trustee's rights and duties (*see*

Tr. at 96), Defendant argues that the rationale underlying the Supreme Court's decision in *Caplin*

presents compelling reasons why the limitations of the Bankruptcy Code should apply to a post

plan confirmation private actions trustee. In *Caplin*, the Supreme Court relied on several

grounds for its holding: (1) statutory federal bankruptcy law does not permit a bankruptcy trustee

to assert claims on behalf of third parties, (2) under the doctrines of *in pari delicto* and

subrogation the debtor may have to reimburse the defendant for any recovery by the trustee on

behalf of the creditors, and (3) allowing a bankruptcy trustee to sue on behalf of creditors could

create a risk of inconsistent judgments if creditors choose to sue on their own.

  The concerns underlying the holding in *Caplin* are inapplicable to the present situation.

First, unlike the bankruptcy trustee in *Caplin,* who derived authority from the bankruptcy code,

Zazzali, acting as trustee for the PAT, derives authority from the Private Actions Trust

Agreement and the individual assignment of claims from each of the beneficiaries of the PAT.

Second, the Third Circuit has stated that the doctrine of *in pari delicto* is not a standing issue.

*See Marion*, 591 F.3d at 149 ("[T]he *in pari delicto* issue is separate from that of standing.");

---

  [11]Chancellor Strine's statement that *Caplin*'s holding that a bankruptcy trustee does not
having standing to pursue claims of creditors would apply even to a post plan confirmation
trustee, *see Trenwick*, 906 A.2d at 191, does not alter the Court's conclusion.

14

*Lafferty*, 267 F.3d at 346 ("An analysis of standing does not include an analysis of equitable defenses, such as *in pari delicto*."). Additionally, any potential subrogation issues would not involve the PAT or Zazzali, but rather would involve post-confirmation liquidating trusts, which are not parties to this litigation and for which Zazzali is not the trustee. (D.I. 20 at 12) Finally, *Caplin*'s concerns about inconsistent judgments are unwarranted in the present context, where creditors who have opted to assign their claims to the Trustee are barred from pursuing these claims on their own. *See Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 425 (3d Cir. 1999) (holding that assignor of claims does not have standing to pursue claims it assigned).

Defendant also asserts that the Trustee should be barred from bringing claims on behalf of both the ELT and PAT due to potential conflicts of interests between the estate as a whole and the individual creditors. (*See* D.I. 12 at 15-18) The Trustee, in its dual role as trustee for the ELT and PAT, has the single aim of maximizing the funds available to claimants. *See In re Best Craft Gen. Contr. & Design Cabinet, Inc.*, 239 B.R. 462, 468 (Bankr. E.D.N.Y. 1999) ("[T]he Trustee and [creditor] . . . hold the parallel interest of maximizing the estate through a recovery [in litigation]."). While the Court recognizes the potential for competing interests between the assigned investor claims and the estate's interest, this alone is insufficient to prevent Zazzali from serving as trustee for both the ELT and PAT, as Zazzali must act in accord with the fiduciary duties he owes both to the estate and to the assigning creditors. Further, a Trust Oversight Committee must approve any action involving a situation where there may be competing interests between the ELT and PAT. *See* Tr. at 75-76; *see also generally Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Emps.*, 757 F. Supp. 1434, 1455 (E.D.

15

Pa. 1991), *rev'd on other grounds*, 970 F.3d 1165 (3d Cir. 1992) ("[T]he federal judiciary recognizes that trustees are often called on to balance the competing interests of different beneficiaries."). Thus, the Court concludes that Zazzali does not lack standing due to the potential for conflicts of interest.

## III.    Motion to Dismiss for Failure to State a Claim

### A.    Applicable Pleading Standards

In evaluating the Motion to Dismiss for Failure to State a Claim, the Trustee contends that Federal Rule of Civil Procedure 9(b)'s pleading standard – requiring a plaintiff to plead fraud with particularity – should be relaxed, as the Trustee – a third party outsider to the fraudulent conduct – must plead fraud based on second-hand knowledge and without the benefit of information from the estate and its creditors.[12] (*See* D.I. 24 at 6-7; Tr. at 96) Defendant contends that the Court should hold the Trustee to the same pleading standards as any other plaintiff. (*See* D.I. 27 at 2-3; Tr. at 32-33)

The Court concludes that the Trustee is not entitled to a lax pleading standard. While the Court recognizes there are certain cases where a trustee is at a disadvantage with respect to pleading allegations with the particularity required by Rule 9, due to lack of access to information,[13] this is not one of those situations. Here, the Trustee had the benefit of a three

---

[12]The Trustee concedes that cases applying a lax pleading standard to a bankruptcy trustee are not binding on this Court, as the Trustee is not acting as a bankruptcy trustee; however, the Trustee argues that these cases are applicable by analogy. (Tr. at 96)

[13]*See, e.g.*, *Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.)*, 32 B.R. 199, 203 (Bankr. S.D.N.Y.) ("This liberality is required because it is often the Trustee, a third party outsider to the fraudulent transaction, that must plead fraud on secondhand knowledge for the benefit of the estate and all of its creditors."); *see also generally Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("Particularly in cases of corporate fraud, plaintiffs

million dollar investigation into the DBSI fraud, which involved interviewing sixty-one witnesses and resulted in a detailed, 369-page report listing the examiner's findings of fact and conclusions. (*See* Tr. at 9)[14] This is not a situation in which a lax pleading standard should apply. *See Trenwick*, 906 A.2d at 211 (refusing to apply lax pleading standard where "[t]he Litigation Trust ha[d] far more access to information than the typical plaintiff").

## B.     Counts One through Four as Asserted on Behalf of the ELT

Counts One through Four of the Complaint assert damages claims that originally belonged to the debtors. (*See* D.I. 1 ¶¶ 110-154) These claims passed from the debtors to the bankruptcy estate pursuant to 11 U.S.C. § 541(a). *See* 11 U.S.C. § 541(a) (stating "bankruptcy estate" is created to receive "the interests of the debtor[s]"). Thus, the bankruptcy estate "stands in the shoes of the debtors." *Lafferty*, 267 F.3d at 354. Pursuant to the Plan, the claims of the bankruptcy estate passed to the ELT. (*See* D.I. 1 ¶ 10) Therefore, the ELT stands in the shoes of the debtors and is subject to the same defenses that could have been asserted against the debtors.[15]

---

cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control.") (internal citations omitted).

[14]The Court does not rely on the merits of the examiner's investigative report in reaching its conclusions on the pending motions. However, both parties stated they had no objection to the Court looking at the examiner's report to assess what background information the Trustee had before filing this lawsuit. (*See* Tr. at 6, 61)

[15]The Court's discussion here is limited to the ELT as the doctrine of *in pari delicto* does not apply to claims asserted on behalf of the PAT, as the Trustee does not "stand in the shoes of the debtors" for claims brought on behalf of private parties. Defendant asserts that the Trustee should be estopped from arguing that it is not a bankruptcy trustee when asserting claims on behalf of the PAT based on the arguments that the Trustee made in connection with the Motion to Dismiss for Lack of Subject Matter Jurisdiction. (D.I. 27 at 5) However, the Court finds

17

Defendant contends that one of the defenses that could have been asserted against the

debtors (and, consequently, which now may be asserted against the Trustee) is the defense of *in*

*pari delicto*. Under the doctrine of *in pari delicto*, a plaintiff is barred from asserting a claim if

the plaintiff participated in the wrongdoing that was a substantial cause of the alleged damages.

*See Lafferty*, 267 F.3d at 354; *see also Am. Int'l Grp., Inc. Consol. Derivative Litig.* (*"AIG"*), 976

A.2d 872, 882-83 (Del. Ch. 2009).

The Court concludes that the doctrine of *in pari delicto* bars the Trustee from asserting

Counts One through Four on behalf of the ELT.[16] Here, the Complaint alleges that the entire

DBSI structure was fraudulent (D.I. 1 ¶¶ 3, 22, 24) and that DBSI became "nothing more than"

an elaborate "Ponzi scheme to defraud investors" (*Id.* ¶ 26). This scheme encompassed all of the

DBSI entities, which allegedly operated as a single enterprise. (*Id.* ¶¶ 111, 119) DBSI and its

related debtor entities played an essential role in the fraudulent scheme by distributing

misleading PPMs and misappropriating investor funds. (*Id.* ¶¶ 50, 52, 93)

The alleged wrongful conduct of officers and directors of DBSI is imputed to DBSI.

---

Defendant's argument unpersuasive as the Trustee did not argue that it was actually a bankruptcy trustee when acting on behalf of the PAT; rather, the Trustee argued there that the Court should apply the bankruptcy code to the Trustee. (*See* Tr. at 96) Thus, the Trustee's current position – that it is not a bankruptcy trustee – is not "irreconcilably inconsistent" with its earlier position. *See Montrose Med. Grp. Participation Sav. Plan v. Bulger*, 243 F.3d 773, 780-81 (3d Cir. 2001) (listing requirements for invoking judicial estoppel as including that party has "taken two positions that are irreconcilably inconsistent").

[16]The Trustee's assertion that the Court cannot apply the doctrine of *in pari delicto* on a motion to dismiss (D.I. 24 at 21) is without merit. *See, e.g., Lafferty*, 267 F.3d at 360 (affirming district court's dismissal of claims due to application of doctrine of *in pari delicto*); *see also Collins & Aikman Corp. v. Stockman*, 2010 WL 184074 (D. Del. Jan. 19, 2010), *adopted by* 2010 WL 1687795 (D. Del. Apr. 26, 2010) (dismissing claims based on application of *in pari delicto*); *see also generally Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.").

Imputation is a matter of state law. *See Lafferty*, 267 F.3d at 358. Delaware, Idaho, and Virginia – the three states whose laws potentially may cover the present causes of action[17] – all apply the rule that management's misconduct in the course of employment is imputed to the corporation.[18]

The Trustee's argument that the adverse-interest exception to imputation applies here is unpersuasive. (*See* D.I. 24 at 21-23) The adverse-interest exception is a narrow exception that applies only where the fraud is ***entirely adverse*** to the corporation's interest, such that the actor has completely abandoned the corporation's interests.[19] The Complaint indicates that the fraud conferred a benefit on DBSI in the form of bringing in more than $100 million of revenue to DBSI, some of which was used for "general corporate purposes."[20] (D.I. 1 ¶¶ 48, 50) While the decision of the insiders to steal this money may have harmed the corporation, this does not alter

---

[17]Neither party has briefed the applicability of any other state's laws with respect to this issue. Thus, the Court will presume, without deciding, that either Delaware, Idaho, or Virginia law is applicable.

[18]*See In re AIG*, 976 A.2d at 881-82, 887 (applying Delaware law and imputing alleged fraudulent conduct of AIG officers to corporation); *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 597 (Va. 1984) (stating that, under Virginia law, "a principal is liable for negligent acts that its agent commits within the scope of his employment"); *Williams v. Cont'l Life & Accident Co.*, 593 P.2d 708, 709-10 (Idaho 1979) (applying imputation rules set out in RESTATEMENT (SECOND) OF AGENCY).

[19]*See In re AIG*, 976 A.2d at 891 (applying Delaware law); *Allen Realty Corp.*, 318 S.E.2d at 594-95 (applying Virginia law). Idaho courts have not specifically addressed the scope of the adverse-interest exception, but Idaho relies on the RESTATEMENT (SECOND) OF AGENCY in imputation cases, *see Cont'l Life & Accident Co.*, 592 P.2d at 709-10, and the Restatement provides that the exception applies only where "the agent is secretly acting adversely to the principle and entirely for his own or another's purpose." RESTATEMENT (SECOND) OF AGENCY § 282 (1958).

[20]Courts have held that when a corporation receives funds from its investors this is a benefit, even if the corporation received the funds through illegal or inappropriate acts of its officers. *See, e.g., In re CitX Corp., Inc.*, 448 F.3d 672, 677-78 (3d Cir. 2006) (holding that, although officers misused incoming cash, cash paid to corporation constituted benefit).

19

the fact that the insiders still conferred some benefit on DBSI. *See Kirschner v. KPMG LLP*, 938

N.E.2d 941, 953 (N.Y. 2010) ("Even where the insiders' fraud can be said to have caused the

company's ultimate bankruptcy, it does not follow that the insiders 'totally abandoned' the

company."). Thus, the Court concludes that the DBSI insiders' conduct was not entirely adverse

to DBSI's interests.

Plaintiff's contention that *in pari delicto* cannot apply to its claims because Defendant is

alleged to be an insider is unavailing, as only those who actually control the corporation are

considered "insiders" for this purpose. *See OHC Liquidation Trust v. Credit Suisse First Boston*,

340 B.R. 510, 536 (Bankr. D. Del. 2006) (stating that insiders are "fiduciaries . . . and de facto

controllers of the Debtors"); *Official Comm. of Unsecured Creditors v. Shapiro*, 2001 WL

1468250, at *1 (E.D. Pa. Nov. 16, 2001) ("Unlike outside consultants and advisors, ***insiders***

***exercise control over a corporation*** and should not benefit from *in pari delicto*, which is an

equitable defense.") (emphasis added). The Complaint contains no allegations that Defendant

controlled the corporation. Thus, there is no basis from which the Court may draw a reasonable

inference that an outside law firm which drafted fraudulent PPMs was in de facto control of

DBSI or had become an insider.

## C.    Counts 1 and 2: RICO Claims Asserted on Behalf of PAT

Count One of the Complaint asserts a claim for violation of the federal RICO statute, 18

U.S.C. § 1962(c), and the Idaho RICO statute, IDAHO CODE § 18-7804(c). (*See* D.I. 1 ¶¶ 110-

134) Count Two of the Complaint asserts a claim for conspiracy to violate these provisions.

(*See id.* ¶¶ 135-139)

"In order to plead a violation of RICO, [a] plaintiff[ ] must allege that the defendant

20

conducted an enterprise through a pattern of racketeering activity." *Lum v. Bank of Am.*, 361
F.3d 217, 223 (3d Cir. 2004). To plead a RICO conspiracy, a plaintiff must allege "knowing
agreement to facilitate a scheme which includes the operation or management of a RICO
enterprise." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d. Cir. 2010). The
elements for violation of the companion Idaho RICO statute have been interpreted to be the same
as those required under federal law. *See Mannos v. Moss*, 155 P.3d 1166, 1174-75 (Idaho 2007)
(dismissing claim under Idaho RICO statute citing United States Supreme Court's interpretation
of federal RICO statute); *see also State v. Nunez*, 981 P.2d 738, 742 (Idaho 1999) (stating that in
order to prove violation of Idaho RICO statute, plaintiff must prove existence of "enterprise"
connected to "patten of racketeering activity").

The Court concludes that the Complaint fails to adequately plead a violation of the
federal or Idaho RICO statutes because (1) the securities fraud exception bars these claims,
(2) the Complaint fails to adequately plead the requisite elements of the underlying racketeering
activity of mail fraud or wire fraud, and (3) the Complaint fails to adequately plead that
Defendant conducted a RICO enterprise.

### 1. Securities Fraud Exception

Pursuant to the securities fraud exception to RICO, "no person may rely upon any
conduct that would have been actionable as fraud in the purchase or sale of securities to establish
a violation of section 1962." 18 U.S.C. § 1962(c). The facts pled in the Complaint establish that
the RICO enterprises were created to carry out fraud in connection with the sale of securities.

The Complaint alleges that the enterprises were created "for the purpose of carrying on a
fraudulent Ponzi scheme and to cheat investors . . . ." (D.I. 1 ¶ 121) In order to carry out this

21

Ponzi scheme, the Complaint alleges that the members of the enterprise used PPMs to defraud investors into buying TIC syndications. (*See id.* ¶¶ 22, 28, 30-31, 125) The Complaint explicitly alleges that the TIC syndications were sold by a "securities" corporation. (*See id.* ¶ 81) Further, the Trustee admits that it "has alleged . . . that the TIC interests are in fact securities."[21] (*See* D.I. 24 at 26 n.13) The Trustee's contention that the corporate insiders were looting the corporation (*see id.* at 27) does not alter the fact that the conduct giving rise to the RICO claim was the sale of securities based on PPMs which contained false information. Likewise, the Trustee's assertion that the underlying conduct involved Account Reserves – which are not securities – is irrelevant, as the conduct in which Defendant participated was the drafting of PPMs for the sale of TIC securities; it is this conduct which Plaintiff alleges constitutes the pattern of racketeering activity and serves as the basis for the mail and wire fraud predicate acts. (*See* D.I. 1 ¶¶ 125-26, 128, 131-32) Thus, the securities fraud exception bars the Trustee's RICO claims.

## 2.    **Predicate Acts**

The Complaint fails to adequately allege with sufficient particularity the underlying racketeering acts of mail or wire fraud.[22] Mail and wire fraud require "(1) the defendant's *knowing and willful participation* in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of mails or interstate wire communications in furtherance of the

---

[21]The fact that Defendant provided an opinion letter stating that the TIC interests were not securities does not alter the Court's analysis. This opinion letter is not integral to, relied on, or even mentioned in the Complaint and, thus, is outside the scope of what the Court can consider on a motion to dismiss. *See Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004).

[22]Contrary to Defendant's assertion (*see* D.I. 23 at 20-21), mail fraud and wire fraud are predicate acts under Idaho law. *See* IDAHO CODE *Ann.* § 18-7803(a) (listing "[f]raudulent practices" and "fraud generally" as predicate acts for Idaho Racketeering Statute).

scheme." *United States v. McGeehan*, 584 F.3d 560, 565 (3d Cir. 2009), *vacated on other grounds*, 625 F.3d 159 (3d Cir. 2010) (emphasis added). The elements of mail and wire fraud must be pled with "particularity." *See* FED. R. CIV. P. 9(b); *see also Lum*, 361 F.3d at 223-24.

The Complaint's recitation of allegations that Defendant had "knowledge" and "knew" (*see* D.I. 1 ¶¶ 45, 60, 79, 87, 93, 128, 143, 144, 159) of the DBSI's fraudulent scheme are insufficient to adequately plead knowledge. *See Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court concludes that the Complaint does not contain factual allegations from which Defendant's knowing participation in the fraudulent scheme can be inferred.

The facts alleged in the Complaint indicate that Defendant – a "preeminent firm in the field of syndicating 1031 exchanges" – performed specialized legal work for DBSI by drafting PPMs, which were used to defraud investors. (*See id.* ¶¶ 26, 28-30, 41, 45) The Complaint contains no information that gives rise to a reasonable inference that Defendant was aware of or was on notice that the DBSI entities were running a Ponzi scheme; in fact, the Complaint alleges that DBSI "presented to the world the illusion of a monolith of wealth." (*Id.* ¶ 1) Further, the Complaint contains no allegation that Defendant was paid more than its customary fee for the legal services it provided or gained any improper benefit from DBSI's fraud. (*See* Tr. at 96) While the Complaint does allege that various corporate insiders met to discuss the cash-flow problems of DBSI and the fraudulent scheme, it indicates that Defendant did not attend these meetings. (*See* D.I. 1 ¶ 105)

The Trustee contends that there were "red flags" which put Defendant on notice of DBSI's fraud and which give rise to an inference of knowledge. (*See* Tr. at 95 (stating "[t]he

23

economics of the TIC transactions were so wi[ldly] improbable based on generally accepted econometrics, the cap rate, that they would establish knowledge as to a number of things . . . . [These] are red flags")) However, there are no factual allegations in the Complaint that support the Trustee's contention. Thus, the Trustee's RICO claim fails, as it does not adequately plead knowing and willful participation in the underlying racketeering activities.

### 3. **Conducting a RICO Enterprise**

The Complaint fails to adequately allege that Defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of" the RICO enterprise. 18 U.S.C. § 18-7804(c); *see also* IDAHO CODE § 18-7804(c). The United States Supreme Court explained the "conduct" requirement in *Reeves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993), and held that mere participation in the enterprise is not sufficient; rather, the defendant must "have some part in directing" the affairs of the enterprise. *Id.* at 178-79. The Third Circuit has applied *Reeves* to dismiss claims against an outside professional where there is no indication that the third-party professional directed the affairs of the alleged RICO enterprise. *See Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539-40 (3d Cir. 1993) (dismissing RICO claim against accounting firm for failure to adequately plead that defendant conducted RICO enterprise, reasoning "[i]t cannot be said that by merely performing what are generic financial and related services to [a] company, even if they are later found to be deficient, an accounting firm has opened itself up to liability under the federal racketeering statute").

While the Complaint formulaically recites that Defendant was in "control" of the RICO enterprise, this threadbare recital of "control" is insufficient, as the Complaint fails to plead any facts demonstrating that Defendant was in control. *See Iqbal*, 556 U.S. at 678. The Complaint

24

merely alleges that Defendant provided routine legal services – drafting PPMs for a corporation. (*See* D.I. 1 ¶ 28) Thus, like in *Peat*, here it cannot be said that, by merely performing routine legal services, Defendant is liable for a RICO violation.

Further, as previously discussed, the Complaint does not contain adequate facts to support an inference that Defendant had knowledge of illegal aims of the enterprise and, without such knowledge, Defendant could not conduct a RICO enterprise. *See United States v. Urban*, 404 F.3d 754, 770 (3d Cir. 2005) (stating conducting of RICO enterprise does not require that defendant "hold a managerial position within an enterprise, but [that defendant must] *knowingly further the illegal aims of the enterprise* by carrying out the directives of those in control") (emphasis added).

### 4. Conspiracy to Commit RICO Claims

Based on the Court's conclusion that the Complaint fails to adequately state a claim for violations of the federal and Idaho RICO statutes, it follows that the Complaint also fails to state a claim for conspiracy to violate these statutes. *See Zavala v. Wal Mart Stores, Inc.*, __ F.3d ___, 2012 WL 3217522 (3d Cir. 2012) (affirming dismissal of RICO and conspiracy to commit RICO claims because complaint did not adequately allege predicate acts required for RICO claim); *see also Binary Semantics Ltd. v. Minitab, Inc.*, 2008 WL 763575, at *5 (M.D. Pa. Mar. 20, 2008) (stating that RICO conspiracy claim "necessarily fails due to failure to state a claim under RICO").

### D. Count 5: Aiding and Abetting Fraud

Count 5 of the Complaint alleges aiding and abetting fraud. (*See* D.I. 1 ¶¶ 155-160) As an initial matter, the parties dispute which state's law governs this claim. The Trustee contends

25

that it is unclear which law will govern as there were investors who were defrauded throughout

the United States; however, in its briefing, the Trustee analyzes this count exclusively under

Delaware law. *(See* D.I. 24 at 19) Defendant asserts that a claim for aiding and abetting fraud

would be governed by Delaware, Idaho, or Virginia law – to the extent that these states recognize

a cause of action for aiding and abetting fraud. (D.I. 23 at 24)

The Court will defer making a choice of law determination until there is development of a

more complete factual record. *See Graboff v. The Collern Firm*, 2010 WL 4456923, at *8 (E.D.

Pa. Nov. 8, 2010) ("Due to the complexity of this analysis, when confronted with a choice of law

issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is

more appropriate to address the issue at a later stage in the proceedings."). The Court will

presume, without deciding, that either Idaho or Delaware law applies to this count as these are

the states' laws specifically addressed by the parties in their briefing.[23]

In order to state a claim for aiding and abetting fraud under either Idaho or Delaware law,

the plaintiff must allege that defendant had knowledge of the underlying fraud.[24] As previously

---

[23]Defendant also raised the possibility of Virginia law, but correctly noted that Virginia
does not recognize a cause of action for aiding and abetting fraud. *See Meadow Ltd. P'ship v.
Heritage Sav. & Loan Assn.*, 639 F. Supp. 643, 653-54 (E.D. Va. 1986). Although Defendant
contends that Idaho does not recognize the tort of aiding and abetting fraud, Defendant failed to
cite any authority in support of this assertion. *See* D.I. 23 at 24; *see also O'Banion v. Select
Portfolio Servs., Inc.*, 2010 WL 3834055, at *5 n.8 (D. Idaho Aug. 13, 2010) ("[T]he Court will
assume that Idaho law would recognize a tort for aiding and abetting fraud.").

[24]*See O'Banion*, 2010 WL 3834055, at *5 n.8 ("[T]he plaintiff must allege and prove in
addition to the perpetration of the underlying fraud that there was knowledge of this fraud on the
part of the aider and abettor; there was substantial assistance by the aider and abetter in the
achievement of the fraud; and that damages to the plaintiff were proximately caused thereby.")
(Idaho law); *Brug v. Enstar Grp., Inc.*, 755 F. Supp. 1247, 1256 (D. Del. 1991) ("[A] plaintiff
must demonstrate that: (1) a wrongful act was committed, (2) the defendant had knowledge of
the act, and (3) the defendant knowingly and substantially participated in or provided substantial

26

discussed, Plaintiff has failed to plead facts giving rise to an inference that Defendant had knowledge of DBSI's fraudulent scheme. Accordingly, Count 5 will be dismissed.

## E. Count 6: Civil Conspiracy

Count 6 of the Complaint alleges that Defendant engaged in civil conspiracy. (*See* D.I. 1 ¶¶ 161-64) The parties dispute which law applies to Count 6. (*Compare* D.I. 23 at 24-25 (discussing adequacy of pleading under Idaho and Virginia law) *with* D.I. 24 at 16 (discussing adequacy of pleading under Idaho law)) The Court will presume, without deciding, that either Idaho or Virginia law applies.

In order to plead a claim for civil conspiracy under either Idaho or Virginia law, the plaintiff must allege that there was an agreement to pursue an unlawful objective.[25] The Complaint fails to adequately allege an agreement between Defendant and the DBSI corporate insiders.

The Complaint contains the following allegations regarding an agreement:

> An agreement was formed between the Insiders and Hirschler
> Fleischer at the time of Hirschler Fleischer's retention. By drafting
> intentionally misleading and opaque language throughout the
> various PPMs, one can easily infer Hirschler Fleischer agreed to
> assist the Insiders in their scheme to defraud thousands of
> unwitting investors.

---

assistance for the wrongful act.") (Delaware law).

[25] *See Taylor v. McNichols*, 243 P.3d 642, 660 (Idaho 2010) ("A civil conspiracy that gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective in an unlawful manner."); *Lesner Pointe Condo. Ass'n, Inc. v. Harbour Point Bldg. Corp.*, 2002 WL 32182354, at *18 (Va. Cir. Ct. Apr. 10, 2002) ("A valid cause of action for civil conspiracy must allege an agreement between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff.") (internal quotation marks omitted).

(D.I. 1 ¶ 30)

> The wrongs alleged herein were the product of agreement among
> or a confederation among the Insiders and Hirschler Fleischer
> during a period beginning no later than 2004 through in or about
> 2008 with the common objective of accomplishing the wrongs
> alleged, including, but not limited to, misleading investors.

(*Id.* ¶ 162)

These threadbare recitals of an agreement, supported by mere conclusory statements, are

insufficient to satisfy the Trustee's pleading burden. *See Iqbal*, 556 U.S. at 678; *see also*

*Twombly*, 550 U.S. at 557 (noting that "naked assertion of conspiracy . . . gets the complaint

close to stating a claim, but without some further factual enhancement it stops short of the line

between possibility and plausibility of entitlement to relief") (internal quotation marks omitted).

Contrary to the Trustee's assertion, the Court cannot "easily infer" that there was an agreement to

defraud. As already explained, the Complaint fails to adequately allege that Defendant had

knowledge of DBSI's fraud. Without knowledge of the fraud or any facts indicating that

Defendant actually agreed to enter into a conspiracy, the mere allegation that Defendant drafted

PPMs containing misleading information is not sufficient to give rise to a plausible inference that

Defendants agreed to commit fraud. *See generally Twombly*, 550 U.S. at 556-57 ("Without

more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at

some unidentified point does not supply facts adequate to show illegality.").[26]

**F.    Count Seven: Aiding and Abetting Breach of Fiduciary Duty/Breach of Trust**

Count Seven of the Complaint alleges that Defendant aided and abetted the directors and

---

[26]Based on the Court's conclusion that Plaintiff has failed to adequately allege an
agreement, the Court will not address Defendant's additional argument that an attorney cannot
conspire with a client under Idaho or Virginia law. (*See* D.I. 23 at 25)

officers of DBSI in breaching their fiduciary duties owed to investors. (*See* D.I. 1 ¶¶ 165-75)

Again, the parties dispute what law governs this claim. (*Compare* D.I. 23 at 26 (wherein Defendant's assert that Delaware law applies) *with* D.I. 24 at 28-29 (wherein Plaintiff argues for application of either Delaware, Idaho, or Virginia law)) At this phase of the litigation, the Court presumes, without deciding, that either Delaware, Idaho, or Virginia law governs this claim.

In order to state a claim for breach of fiduciary duty under Delaware law, a Plaintiff must show "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) a knowing participation in that breach by [the alleged aider and abettor]." *In re Santa Fe Pac. Corp. Shareholder Litig.*, 669 A.2d 59, 72 (Del. 1995). The elements are substantially similar under Idaho and Virginia law.[27]

The Complaint fails to adequately allege "knowing participation" in the DBSI insiders' breach of fiduciary duty. The Complaint's allegations that Defendant provided legal services that were common in the industry, without more, does not support an inference that Defendant "knowingly participated" in DBSI's fraudulent scheme. *See Morgan v. Cash*, 2010 WL 2803746, at *4-*8 (Del. Ch. July 16, 2010) (determining that complaint alleging third-party professional engaged in "routine" practices for corporation failed to state claim for aiding and abetting where there was a lack of facts pled "suggesting how and why" third-party used its

---

[27]*See State of Idaho, Dept. of Fin. v. Tenney*, 858 P.2d 782, 788 (Idaho App. 1993) (listing required elements of: (1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong); *AvalonBay Cmty., Inc. v. Willden*, 2009 WL 2431571, at *11 (E.D. Va. Aug. 7, 2009) ("Virginia law allows a third party to be liable for another party's breach of fiduciary duty when that third party knowingly participated in the breach . . . [and] affirmatively aid[ed] the breach with the requisite mens rea, or culpable state of mind.").

position to aid and abet). Count Seven's formulaic recitation of the knowledge requirement –
"Hirschler Fleischer knowingly and substantially participated in the aforementioned breaches of
fiduciary duty by the Insiders" (D.I. 1 ¶ 174) – is insufficient to state a claim. *See Iqbal*, 556 U.S.
at 678.[28]

### G.   Count Eight: Aiding and Abetting Breach of Fiduciary Duty

Count Eight of the Complaint alleges that the officers and directors of DBSI breached
fiduciary duties owed to DBSI's creditors and were aided and abetted by Defendant. (*See* D.I. 1
¶¶ 176-85) This count fails for the same reason discussed above in connection with Count 7 –
namely, the Complaint fails to allege "knowing participation" in the DBSI nsiders' breach of
fiduciary duty. The Trustee's contention that, based upon "the numerous and glaring
misstatements in the PPMs, Hirschler Fleischer must have known that the Insiders were
committing fraud and breaching their fiduciary duties to the TIC investors" (*Id.* ¶ 179), is
unsupported, as the Trustee has failed to plead any fact giving rise to a reasonable inference that
Defendant was aware that the PPMs did not contain factually accurate financial information.[29]

---

[28]Based on the Court's conclusion that Count 7 fails to state a claim upon which relief can
be granted due to failure to adequately allege knowing participation in the principal's breach of
fiduciary duty, the Court will not address Defendant's additional argument that Delaware law
does not recognize fiduciary duties flowing from corporate officers to investors. (*See* D.I. 23 at
26)

[29]Based on the Court's conclusion that Count 8 fails to state a claim upon which relief can
be granted due to failure to adequately allege knowing participation in the principal's breach of
fiduciary duty, the Court will not address Defendant's additional argument that Delaware law
does not recognize fiduciary duties flowing from corporate officers to investors. (*See* D.I. 23 at
27)

## H.     Count Nine: Avoidance and Recovery of Two Year Transfers as Actual Fraudulent Transfers

Count Nine of the Complaint seeks to recover damages in the form of payments made to

Defendant totaling $225,442.69. (*See* D.I. 1 ¶¶ 186-191; *see also id.*, Ex. D)  Count Nine is

brought pursuant to 11 U.S.C. § 548(a)(1)(A), which permits a trustee to avoid a transfer withing

two years of the bankruptcy petition date if "the debtor voluntarily or involuntarily . . . made such

transfer or incurred such obligation with *actual intent to hinder, delay, or defraud* any entity to

which the debtor was or became . . . indebted" (emphasis added).

The Complaint fails to adequately allege intent to defraud.  Other than merely identifying

the alleged fraudulent transfers in exhibit D attached to the Complaint, Count Nine fails to allege

with any specificity facts or other supporting information which would establish the fraudulent

nature of these transactions.[30]  Rather, Count Nine merely provides a recitation of the statutory

requirements.  This is insufficient as a matter of law.  *See In re Oakwood Homes Corp.*, 325 B.R.

696, 699 (Bankr. D. Del. 2005) (dismissing claim for fraudulent conveyance and avoidance

---

[30]Plaintiff's argument that the Complaint pleads several "badges of fraud" sufficient to
show the transferor's intent to defraud is unavailing.  (*See* D.I. 24 at 30)  The "badges of fraud,"
which serve as circumstantial evidence of fraudulent intent, are: (1) the relationship between
transferor and transferee; (2) the consideration for the transfer; (3) the insolvency of the
transferor; and (4) the concealment or secrecy of the transaction.  *See In re Fedders N. Am., Inc.*,
405 B.R. 527, 545 (Bankr. D. Del. 2009).  Besides insolvency – which Plaintiff has adequately
alleged (*see* D.I. 1 ¶¶ 94-109) – Plaintiff has failed to allege facts supporting any of the other
badges of fraud.  Specifically, as previously discussed, the Complaint fails to adequately allege
knowledge of the fraudulent scheme on behalf of Defendant and, thus, the relationship between
Defendant and DBSI is alleged to be a typical attorney-client relationship.  (*See id.* ¶ 141)
Additionally, the Complaint does not allege that Defendant received anything outside of its
ordinary legal fees for drafting the PPMs and advising DBSI, and thus the second badge of fraud
is not present.  Finally, the Complaint does not plead any facts indicating or giving rise to an
inference that the attorney-client relationship between Defendant and DBSI (or Defendant's role
in drafting the PPMs) was kept secret.

where complaint merely recited statutory elements and attached exhibit showing information

regarding alleged fraudulent transfers); *see also In re Brown Schools*, 368 B.R. 394, 403-04

(Bankr. D. Del. 2007) (dismissing § 548(a)(1)(A) claim that sought to avoid payment of fees to

law firm because complaint failed to "allege enough facts from which the Court [could] conclude

that the payment was" made with required intent).

## I.       Count 10: Avoidance and Recovery of Constructively Fraudulent Transfers

Count Ten seeks avoidance based on 11 U.S.C. § 548(a)(1)(B), which permits a

bankruptcy trustee to avoid a transfer made within two years of the petition date if certain

conditions are met and the debtor "received less than a reasonably equivalent value in exchange"

for the transfer made.  (*See* D.I. 1 ¶¶ 192-96)

The Complaint fails to adequately allege that DBSI received less than a reasonably

equivalent value in exchange for the amount of money it paid Defendant.  The Complaint merely

recites the statutory elements of this claim, pleading no facts to support this claim or that give

rise to an inference that Defendant received less than a reasonably equivalent value. Thus, Count

10 fails to adequately plead a claim for avoidance. *See In re USDigital, Inc.*, 443 B.R. 22, 39

(Bankr. D. Del. 2011) (dismissing avoidance claim because complaint "fail[ed] to provide any

factual allegations supporting the assertion that [debtor] did not receive reasonably equivalent

value").

## J.       Count 11: Avoidance and Recovery of the
##          Four Year Transfers as Actual Fraudulent Transfers

Count Eleven seeks to recover all payments made to Defendant during the four years

proceeding the petition date, a total of $831,890.76.  Plaintiff alleges that it is entitled to relief

32

pursuant to Idaho Code § 55-913(1)(A), which contains the same operative language as 11

U.S.C. § 548(a)(1)(A), the provision underlying Count Nine. *See* IDAHO CODE § 55-913(1)(A)

(requiring that debtor made transfer or incurred obligation "[w]ith actual intent to hinder, delay,

or defraud any creditor of the debtor").

This claim fails for the same reasons listed above in conjunction with Count Nine –

namely, the Complaint fails to adequately allege intent to defraud and merely recites the requisite

statutory elements for this claim without pleading any facts to support it.

### K.    Count 12: Avoidance and Recovery of the Four Year Transfers as Constructively Fraudulent Transfers

Count Twelve seeks to recover all payments made to Defendant during the four years

preceding the petition date. (*See* D.I. 1 ¶¶ 205-13)  Plaintiff alleges that it is entitled to relief

under Idaho Code § 55-913(1)(b), which parallels 11 U.S.C. § 548(a)(1)(B), the basis for Count

Ten. *See* IDAHO CODE § 55-913(1)(b) (requiring that debtor made transfer or incurred obligation

"[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation").

This claim fails for the same reasons listed above in conjunction with Count Ten –

namely, the Complaint fails to adequately allege that DBSI did not receive a reasonably

equivalent value in exchange for Defendant's legal services and the Complaint merely recites the

requisite statutory elements for this claim without pleading any facts to support it.

### L.    Count 13: Avoidance and Recovery of the Four Year Transfers as Constructively Fraudulent Transfers

Count Thirteen seeks avoidance of four years of transfers made to Defendant pursuant to

Idaho Code § 55-914(1). (*See* D.I. 1 ¶¶ 214-220)  Section 55-914(1) of the Idaho Code parallels

the language of the statutes quoted in conjunction with Counts Ten and Twelve. *See* IDAHO

33

CODE § 55-914(1) (permitting avoidance of transfers made "without receiving reasonably equivalent value in exchange").[31]

Thus, Count Thirteen fails for the same reasons listed above in conjunction with Counts Ten and Twelve – namely, the Complaint fails to adequately allege that DBSI did not receive a reasonably equivalent value in exchange for Defendant's legal services and the Complaint merely recites the requisite statutory elements for this claim without pleading any facts to support it.

### M.     Count 14: Transfers in Fraud of Creditors

Count Fourteen seeks to recover all payments made to Defendant during the four years prior to the petition date pursuant to Idaho Code § 55-906, which has the same operative language as the provisions that are the basis of Counts Nine and Eleven. (*See* D.I. 1 ¶¶ 221-230)

Thus, Count Fourteen fails to adequately plead a claim for the same reasons listed above in conjunction with Counts Nine and Eleven – namely, the Complaint fails to adequately allege intent to defraud and merely recites the requisite statutory elements for this claim without pleading any facts to support it.

### N.     Count 15: Preferential Transfers

In Count Fifteen, the Trustee seeks to avoid all preferential transfers, as defined in 11 U.S.C. § 547, that DBSI made to Defendant. (*See id.* ¶ 231-243)  Pursuant to 11 U.S.C. § 547(b)(4)(A), the Trustee can avoid certain preferential transfers only if they were made "on or within 90 days before the date of the filing of the petition."  Here, the Complaint fails to establish that DBSI made any payments to Defendant "on or within 90 days before the filing of the

---

[31]The Idaho Code provision of Count Twelve addressed transfers to "present and future creditors" whereas the Idaho Code provision cited in Count Thirteen addresses transfers to "present creditors."

34

petition" in this case. Thus, Count Fifteen fails to adequately state a claim.

### O.    Leave to Amend

At the hearing, the Trustee requested leave to amend the Complaint with respect to any counts that the Court dismissed. (*See* Tr. at 124) Defendant opposes Plaintiff's request for leave to amend. (*See* Tr. at 124-25)

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). The Court will grant Plaintiff's request for leave to amend Counts Five through Fifteen, as Plaintiff may be able to add factual allegations regarding knowledge; hence, under the circumstances, amendment of these claims is neither futile nor inequitable. However, the Court will deny Plaintiff's request for leave to amend with respect to Counts One through Four, as the Court concludes that amendment of these counts would be futile. Counts One through Four asserted on behalf of the ELT are barred by the doctrine of *in pari delicto*. Counts One and Two, which plead RICO claims on behalf of the PAT, are barred by the securities fraud exception and have numerous pleading deficiencies which cannot be cured by amendment.

### CONCLUSION

For the reasons discussed above, the Court will deny Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and will grant Defendant's Motion to Dismiss for Failure to State a Claim. Plaintiff will be given leave to amend Counts Five through Fifteen of the Complaint.

35